MR. BRESS, WHEN YOU'RE READY. Thank you and good morning, Chief Judge Maynard, and may it please the Court. The claim term at issue here is culturing cells in three dimensions. It's undisputed that the ordinary meaning of that term encompasses all manners of culturing cells in three dimensions, including using beads. It's also undisputed that culturing cells in three dimensions using beads was known in the art and presumably known to the inventors at the time of the application. Yet, the District Court, therefore, for you to win, having made those statements, you're going to have to show us clear and unmistakable evidence of a disavowal of the culturing in 3D, right? Your Honor, I agree that that's what my opponents have to show. Okay. Proceed. The District Court here did construe the fact that culturing cells in 3D with beads was known to those of our national era. Do I learn that anywhere from any disclosure in the patent? Yes, Your Honor. Where? I looked in the patent to sort of see where they're talking about using beads in 3D. Your Honor, in the first place. Maybe show me. It certainly is conceded in this case, but beyond that, Your Honor. Am I right that, like I was looking at the 494, there's no disclosure in the patent of culturing cells in 3D using beads? Your Honor, the disclosure would come in the form of the incorporation of the Doyle reference. Okay, so let's assume for purposes of argument that you lose on that. Assume that, you know, I agree with the District Court that Doyle is not incorporated by reference for the purpose that you're trying to do. Your Honor, in addition to that, the second of the two patents, the 746 patent, cites a Selden patent application. Can you be precise which column? Certainly, Your Honor. Selden is cited on the very first page of the 746 patent, and it is in the right-hand column of the first page. What page of the appendix are you on? Sorry, I am on page... Is it 10,020 or 10,010? Is this 746 patent column two, sir? Is that correct? Yes, 746 patent column two, and that would be page 100,044. No, sorry, 100,019 of the JA. And it's cited as PCTWO... What line is it? This is before you get to the lines, Your Honor. It's on the very front page. On the very front page of the... Yes, Your Honor, before you even get to the columns. I'm looking at it in the back of your blueprint. Under the column other publications? Yes, foreign patent documents, actually. It's in the abstract? Yes. And where are we? Under foreign patent documents, it's WOPCTWO9821312. So somewhere buried in that foreign patent? In that patent is discussed on three-dimensional cell culturing... From inside one of the foreign patent documents? Is it your view that our law is that when you cite a reference, whether it's a treatise or multiple references, that you don't have to call it out with any kind of particularity for it to suffice as being incorporated in its entirety? This court has held in Gillertract, for example, Your Honor, that the inclusion of a patent as prior art does make that patent part of the intrinsic record for purposes of understanding what was in the prior art. Here, the prior art... So that wouldn't include Doyle? I'll address Doyle separately, Your Honor. I think that it would include Doyle, actually, because... Is there a document that says when you recite the foreign patent document, then that document is incorporated in its entirety into the spec? In Gillertract, this court incorporated a patent that was cited as part of prior art for purposes of understanding what was in the prior art. Was it in the text of the specification? I don't believe so, Your Honor. I don't know how it was. I've never seen one where somebody says, well, you give a list of foreign patent documents, you know, this part, and so every single word in those documents is incorporated by reference inside of the spec of the patent in which it's attached. Your Honor, I believe that the case law would support it, but let's assume even for purposes... Your case doesn't turn on incorporating the entire document by reference. You're just pointing out that these and other references show that one of skill in the art would certainly understand you can use beads in 3D. Absolutely, Your Honor, and in fact, the only extrinsic evidence in this case, which was the testimony, unrecuted testimony of Dr. Solomon, is that culturing cells in three dimensions using beads was known in the prior art, and that has been conceded over and over and over again by histogen. So I don't actually think it's a live issue in the case. That's extrinsic evidence, right? It is, Your Honor. Okay. It is. The court below construed culturing cells in three dimensions away from its ordinary meaning to exclude culturing cells in three dimensions using beads. It did so because it read the specification impliedly to both distinguish all methods of culturing using beads from three-dimensional culturing, and in fact, it defined culturing in three dimensions using beads as a two-dimensional culturing method. Now you can't, as Your Honor pointed out earlier, come to that conclusion unless the specification or other intrinsic evidence is clear and unmistakable, indeed unambiguous, that all culturing using beads, including three-dimensional culturing using beads, is a two-dimensional method. You and your retiree brief at several points take the position that the specification with regard to, I'll call these four bullets, places where beads are true, you say it's ambiguous. Absolutely, Your Honor, it works. And your adversary in his brief says, well, when you have a situation like that under AAI against Prince, we adopt the narrower meaning in order to satisfy the public notion function of claims. And you don't reply to that in your reply brief. Your Honor, they're absolutely wrong about that. The first principle that you look to here is that you give claim terms their ordinary meaning unless there is unmistakable evidence otherwise. You've got to read the specification in light of that principle. Only if you get to a point where even applying those principles you reach an equiforce where you apply the principle that my opponents have. You don't even come close. I'd like to walk through the four bead references. I think it would be helpful to the court. So the first bead reference, which is at JA 100003, column 1, line 37, is one that distinguishes between, on the one hand, cells grown as a monolayer or on beads from cells grown in three dimensions. And it says that only cells grown in three dimensions have the sort of cell-cell-cell matrix interactions that are typical of living tissue. Now my erstwhile adversaries look at this and they presume that on beads means any use of beads or using beads. In fact, they use that term using beads throughout their brief. That's not what it says. It actually says on beads. But anyhow, they presume it means any use of beads and then they use that to limit the meaning of culture and cells in three dimensions, which is the claim term. I submit that's precisely the backwards way of doing it. What this court has taught is that you would look at the claim term culture and cells in three dimensions and then giving it its ordinary meaning, see if you can reconcile the rest of what it says in that sentence with the ordinary meaning, which is all manners of culture in three dimensions. And of course you can here because if you read on beads to mean on the surface of the beads, in other words, a monolayer on the bead, then there's no tension whatsoever between that and the ordinary meaning of culture and cells in three dimensions. Wait, so how would you read it? I mean, take the first sentence you called out. Cell lines grown as a monolayer or on beads. How would you then say that's ambiguous and you would read it as saying what? Your Honor, I actually think that it's pretty clear what it says. What I think what it's saying is on a monolayer or on beads, meaning a monolayer on the bead. Now I understand that that's in a sense superfluous because monolayer would include a monolayer on the bead. But I can understand why they would have done that because a bead itself is a three-dimensional item and if you're talking about culturing on this sphere, I think you might want to explain that your culturing on the bead is like, is a monolayer. And it's being contrasted with culturing cells in three dimensions. That makes sense. It also makes sense of the technology because there's no reason to believe from anywhere in the specification or the prosecution history or anywhere else that culturing in three dimensions using beads lacks the kind of cell-cell and cell-matrix interactions that are typical of living tissue. Talk about the third one. The cells are cultured in monolayer, beads, two dimensions or preferably in three dimensions. Yes, Your Honor. It's a bit of shorthand there. They don't use the terms as a monolayer or on beads. They just sort of say in monolayer, beads, i.e. two dimensions and contrast that with three-dimensional culturing. Once again, you start with the basic proposition that culturing cells in three dimensions get this ordinary meaning and you see if you can reconcile the earlier part of the sentence with it. Once again, you can because i.e. two dimensions can be read and in fact would often be read in our language to mean we're talking about two-dimensional cell culturing on the beads. Again, my adversaries would say i.e. always means definition. Whatever's in that parenthetical is what preceded that parenthetical means. You can't actually do that in this case because there's no way that beads means two dimensions. What's in that parenthetical has to be describing something about how beads is being used not defining beads, the term beads. In their view, i.e. two-dimensional beads all uses of beads are being defined here counterfactually as two-dimensional even though we know some of them are three-dimensional. We submit that our reading is much more plausible and certainly the only reading that's consistent with the ordinate meaning of three dimensions which is corinne, i.e. two dimensions means we're talking about a two-dimensional culturing method on the beads. Perfectly consistent, perfectly reasonable and again, consistent with the ordinary meaning of culturing cells in three dimensions. Lastly, the prosecution history is once again supportive of our read. What it tells us is that the inventors disavowed very specifically by limiting their claim to two-dimensional culturing for a reason and only one reason. Two-dimensional culturing compounds created using two-dimensional culturing was already in the prior art. So they had very good reasons to limit it to get rid of two-dimensional culturing. They had to. There's no reason disclosed in the prosecution history or anywhere else why they would have gone further and disavowed culturing on three dimensions in three dimensions using beads. Not only is there no reason why they would have done it there's no evidence they did because if you look at the back and forth with the examiner beads aren't mentioned even once. One would think that if they intended not only to get rid of that which was in the prior art but something else in addition to that they would have said so and perhaps explained why. There's nothing there and there's no reason why they would have done so. Do you want to save the rest of your rebuttal? I would like to. Thank you. Thank you. Thank you. Chief Judge Rayburn that please the court. Two patents ensued in this case categorically distinguished with four textual anchors between culturing in two dimensions on the one hand and culturing in three dimensions on the other. Let me start off by asking you about I guess the central focus of this case. If you agree conceded as I think you would agree with your friend as to what   of the term three dimensional is in other words that it would include what we're talking about here then what beads do you think would have been used in this case then do you agree that the case law therefore that applies and the principles that apply are that you need a clear and unmistakable disclaimer and the specification in order to get around that. So I guess I'll take there are two parts to your question. First is whether we made a concession. I don't believe that we have made a concession. I think what we have done is we've defended the judge on the terms of her opinion in this case. What do we do with the judge's opinion Mr. Kostantzis and the parties have agreed the term has a common meaning across its various incarnations. If I recall the part of your of her opinion that you're that you're citing there it's that she's dealing she's trying to resolve the debate between the two of you as to what culturing fibroblast cells in three dimensions means. Well I think there are other sides that proposed a plain meaning and your side proposed not a plain meaning but a special meaning that was drawn from what you saw in the disclosure in the patent. I think what the court was appreciating there was that we didn't dispute the meaning of culturing and we didn't dispute the meaning of in three dimensions in the abstract but the entire frame as understood by the patent means. So do you stand here today and challenge that you claim that there's not a plain meaning to the limitation as a whole? Well I think I think there is not and I'll try to explain why. The reason that monolayer and beads are on one side in two dimensions is that culturing in three dimensions is talking about the surface area and when you're culturing on a flat surface like a petri dish that's monolayer and what when you culture on a bead that is really just a monolayer wrapped around a sphere. It is a single layer. Now what my friend on the other side is saying is well these beads will accumulate together or not a bead pardon me but the cells will bond together creates a 3D structure. That's right but that's not culturing in three dimensions. What you have is that's an entirely different thing. That's a three dimensional cell but that's not culturing in three dimensions and in fact the Doyle reference which he's relied on actually teaches a way it says you want to agitate what's in the system further in order to separate these things apart and more importantly if you agitate them sufficiently then you won't get a 3D structure at the end. Well that's right and more importantly what Doyle doesn't say and this is I think the important part to the second part of your question Judge Gross is that Doyle does not say that that is culturing in three dimensions. That's their reading. Now in fact if you were to look at Doyle would you challenge the district court's finding that culturing in 3D includes beads? I mean I think I read your brief I didn't see it. No we didn't challenge it because we're the appellate. And now you're challenged. Well I just I want to make clear that we haven't conceded that point because when I get to the second part of Judge Gross' question whatever the law is and I will my friends on the other side of this has feast upon language in a recent case called Thorner saying that there has to be an explicit I heard that from him earlier today definition in order to have a patent define the term but that goes that goes counter to Phillips itself which says parties can or the patentee can define a term by implication and here you have such clear language in those four anchors. I appreciate your point but can we go back a little Sure I guess what the what are the findings what findings does the district court make about ordinary meaning is it beyond that I mean I'm really just I'm looking at A18 and I understand that your answer to her comment there about the party degree was not for the whole of the phrase and its context of culturing in three dimensions but was just using the words culture separate and three dimension culture and referencing an ordinary meaning of those separate terms she then the only other thing I could see is she later says on A21 the court agrees with histogen that the inventors acted as their own lexicographers away from its ordinary meaning that too clearly suggests that there was agreement and unanimity that this phrase not just the particular words in the phrase but the phrase itself had been assumed to have an ordinary meaning am I reading that incorrectly or are you just saying she's wrong I think she's wrong because she viewed the agreement on the separate parts of the words and the agreement on what those words meant as meaning that culturing in three dimensions the phrase itself had an ordinary meaning but all that said let's say that it had an ordinary meaning let's say that the most rigorous challenge it so for our purposes it does let's get to whether or not there's a clear and unmistakable and that's exactly where I wanted to go it took a while to get there you have four textual anchors in here as I said before Mr. Bress talked to you about the one in column one lines 37 I think we've all read them very carefully they're all ambiguous how do you get to the point of saying that they are clear and unmistakable unmistakable is the word I will help you out with that what he didn't read to you from that first one is cell lines grown as a monolayer or on beads as opposed to cells grown in three dimensions that's a very strong suggestion that's a very strong pointer that grown in monolayer or on beads is something different than categorically different than being grown in three dimensions then you have the next reference in that same paragraph to the conventional condition well that's talking about lacking the cell cell and cell matrix interactions right in the sentence right and that's it and that is exactly what ultimately the inventors abandoned in the prosecution history was that two dimensional lacking the lacking medium now you go on to the third and the fourth references to beads and the third one is column seven lines 24 and 29 and you'll note that my friend put so much weight on the word on as it appeared in the first column but you won't find the word on there the cells are cultured in monolayer monolayer comma beads i.e. two dimensions now he said that our position is that i.e. always means that is definitional well that's of course what it actually means in latin Judge Clevenger as you've written in a non-patent case but more importantly the only cases that depart from that meaning of i.e. are you're not telling us that the culture in 3D with beads would result in cell cell interactions the same cell cell    well I want to make sure we have our terms defined so that we can make sure that we can define the terms that are defined here because when you say culturing in 3D with beads that is not something that this patent even understands that is a contradiction in terms in this patent if what we're talking about is the sort of culturing in 3D with beads would result in the same cell cell interactions as a monolayer on beads if we are if I am accepting your premise then I am not telling you that because that's not necessarily then there is a very good reason for saying as opposed to because there's a difference between the 3D bead array and when you have a 2D bead there's no 3D bead array mentioned anywhere in this patent I'm just in terms of the colloquy that you're having with the chief judge I don't is there anything in the patent that tells me that if you culture cells in 3D using the beads in 3D what does that mean that you will necessarily get the cell cell cell matrix no it doesn't because apparently there's been some extrinsic evidence in the case saying that that is so well that's Doyle which I'm trying to understand what this claim means from the intrinsic evidence from inside well within the four corners of this document it could not be clear that beads are defined as two-dimensional and whether that's lexicography whether it's definition implicit or explicit whether it's disclaimer it's absolutely clear here that two-dimensional is includes beads in that it's not used out in other places the fourth reference by the way to beads also does not use on and that's in column 9 line 66 column 10 line 2 and it says cells may be cultured in any manner known in the art including in monolayer beads or in three dimensions now the reason that of course the specification said that cells may be cultured in monolayer beads was that the original claims included claims to two-dimensional two-dimensional culturing but that was abandoned later on in the prosecution over an anticipation reference I want to mention also that my friend brought up the Selden patent which was mentioned for the first time in this case in his reply brief in this corner page 30 so that's the one that shows up in the foreign patent document right and that's I think that's a little that comes a little late for being cited for the first time in the reply brief in this case but if I could just is it incorporated by reference in the spec that one is not incorporated by reference and there's no claim that it's incorporated by reference it's simply cited as one of the pieces of prior art on the first page right before or after the asterisk what does Selden mean when Selden was talking about culturing in 3D with beads actually even the quoted language of Selden from page 30 of the brief doesn't say that it says have you looked at Selden on this I have unfortunately not looked at Selden in the last week or so unfortunately and so I don't remember it but what they have cited is cells that formed attachments to both the bead surface and other cells and grew as bridges between beads as opposed to cells attached as monolayers on the bead surface and they put in some words in between there quote were more reminiscent of that expected in Viva but it doesn't say it certainly doesn't define the invention there as being that as part of the invention or that as being three dimensions so really to point out to summarize here there are really four main points first of all there are four textual anchors which are absolutely clear so Sam Martino an experienced patent judge and part of the pilot program understood that and understood that this these references were absolutely clear secondly if you're looking for further textual indicators there's a complete absence of anything having to do with beads in the invention disclosure third even if the Doyle treatise which has served so much of a function for my friends on the other side were entirely incorporated by reference and by the way that is a treatise of about this size even if that were incorporated by reference you wouldn't find a definition of three dimensions you don't find that on that page that they cite but you could go to the index of Doyle and you would find in the index several entries that none of those under three dimensional culture use beads and finally Dr. Salomon's extrinsic evidence he admitted himself that the intrinsic record was clear and that was sufficient for an ordinary skill to understand the invention and we think that this intrinsic record is clear beads are outside the scope of the invention we are here in an unusual posture in which our client is actually one of the inventors of the patent and she and her company knew what they had designed and what they hadn't designed and that's why some of our judgement here was properly granted that our client's use of beads was not part of the invention of these patents unless the court has further questions I'll be back in the rest of my time thank you thank you Mr. Bress thank you Chief Judge I'll start with the last point obviously there's no evidence here of what Gail Botten thought or didn't think nor is it at all relevant to what the claims mean we don't take after the fact depositions of inventors of what they put in the patent second of all there's a decent amount of smoke and fire that's all you need but if you need more their response brief in this court page 8 says Prior Art already disclosed many methods of culturing cells in 3D including methods using microcarrier beads so they admit right there on page 8 that in Prior Art discloses methods of culturing cells below and you can look at JA 101 380 which is their responsive brief at Claim Construction page 8 of that brief they say when the 494 patent was filed culturing 3D tissues on beads was known in the archives and then they say that the 494 and 746 patent inventors would have understood that beads could be used in three-dimensional culture systems everything else they've said up here was frankly a bit of obfuscation that's already preceded so we get back to this question of is there anything that unambiguously and unmistakably tells us in the patent specification or otherwise that the inventors meant to exclude 3D culturing with beads or to define 3D as if it were 2D there's nothing even close to that submit the one reference to beads I didn't get you earlier the fourth one they're right it doesn't say on beads and it doesn't say i.e. two dimensions but it comes forth and one would assume that someone reading the specification and reading the other mentions of beads understanding that they are all two-dimensional references would read the fourth one just the same I've got no further questions thank you thank you thank you Mr. Bress          with beads and it doesn't say on beads and it doesn't say on beads and it doesn't say on beads            and it doesn't say on beads and it doesn't say on beads and it does not say on beads and it